Dear Mayor Baquet:
We are in receipt of your request for an Attorney General's opinion regarding the reapportionment of the City of Ville Platte. Your letter states that the city presently has six aldermen, five of whom are elected from districts and one which is elected at large. The city submitted a redistricting plan for preclearance to the U.S. Department of Justice and was advised in December of 1993 that the plan was objectionable. The city requested reconsideration and was advised in April of 1994 that the objection would not be withdrawn. The city has declined to seek a declaratory judgment in the U.S. District Court for the District of Columbia. The city has not yet adopted a new reapportionment plan for the fall elections, for which qualifying begins July 27, 1994.
You have requested an opinion on the following questions:
 1. Does the city in adopting a new reapportionment plan have the authority pursuant to R.S. 33:382 (and in particular subsection D of said statute), or any other appropriate statutes, to vary from its previous plan and choose to increase its number of aldermen and have them all run for election in districts thereby doing away with the one alderman position who runs for election at large?
 2. If the city does not adopt a reapportionment plan in time for the general election on October 1, 1994 and the aldermen who are elected in districts are not able to run for election, what does the one alderman who runs at large do? Is he to be elected with other municipal officials who run at large or must he await the outcome of a new reapportionment plan like the other aldermen who run for election in districts?
 3. Assuming that the one alderman at large must run for election on October 1, 1994 and is elected, what occurs to this alderman if a new reapportionment plan is later adopted (and not objected to by the Justice Department) which would abolish his at large district?
LSA-R.S. 33:1371 provides as follows:
 A. (1) Except as otherwise provided in a home-rule charter, the governing authority of any municipality which contains two or more districts from which public officials are elected shall, within one year after the officials release of every decennial census, examine the apportionment plan of the municipal districts composing the municipal governing authority to determine if there exists any substantial variation in the representation of the districts. After the examination the governing authority of such municipality shall, by ordinance adopted by a majority of the members thereof, either declare the apportionment of the districts to be equitable and continue its existing apportionment plan or provide for a new apportionment plan.
 (2) The time period for examination of the apportionment plan of municipal districts, as provided herein, for municipalities governed by the provisions of Part I of Chapter 2 of Title 33 of the Louisiana Revised Statutes of 1950 shall be within six months of the official release of every decennial census.
 B. If reapportionment is necessary it shall be made effective at the end of the term of the incumbent officials. However, the effective date of such reapportionment shall not occur between the date on which municipal officials qualify for election and the date of the election.
 C. The boundaries of any election district for a new apportionment plan from which members of a municipal governing authority are elected shall contain whole election precincts established by the parish governing authority under R.S. 18:532 or 532.1. (emphasis added.)
In response to your first question, LSA-R.S. 33:382(A) provides that the number of aldermen in a city shall not be less than five nor more than nine. Paragraph B provides for the method of electing aldermen from districts and from the city at large. However, as you pointed out, LSA-R.S. 33:382(D) authorizes the board of aldermen to establish a different method of electing aldermen, i.e., election at large or election at large and from districts. This paragraph specifically states, however, that "[n]o ordinance changing the manner in which aldermen are elected shall be adopted within one year of the date of an election for aldermen."
Furthermore, LSA-R.S. 18:1921-1923 provide time requirements and penalties for local reapportionment, as well as R.S. 33:1371
cited above. R.S. 18:1923 states that the "failure to meet any of the requirements of R.S. 18:1922 shall be misfeasance in office" and "[m]ay subject the local governing authority to the sanction of having the amount of any state revenue sharing funds payable to that governing authority withheld, reduced, or both."
Therefore, it is our opinion with regard to your first question that the city does have the authority to provide a different method of electing aldermen, i.e., either at large or at large and districts. However, it is clear that the city has failed to comply with all provisions of law mandating that reapportionment occur within the specified time period, which may subject the city officials to misfeasance in office as well as withholding or reduction of state revenue sharing funds. Therefore, we do not find it appropriate at this time to opine on your second and third questions, since any legal advice may be interpreted as approval of the city's failure to reapportion at this time. We suggest that the city proceed to adopt a reapportionment plan that is in compliance with state and federal law as soon as possible.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL:pb/0298s
Hon. Bennett Baquet Mayor, City of Ville Platte P.O. Box 390 Ville Platte, LA 70586
DATE RECEIVED:
DATE RELEASED:
ANGIE ROGERS LaPLACE ASSISTANT ATTORNEY GENERAL
DATE RECEIVED:
DATE RELEASED:
ANGIE ROGERS LaPLACE ASSISTANT ATTORNEY GENERAL
MEMORANDUM
TO: KEN DEJAN KAY KIRKPATRICK JIM ROSS
FROM: ANGIE LaPLACE
DATE: JULY 27, 1994
RE: OPINION NO. 94-379
As you will find from a reading of this opinion, I declined to opine on the second and third questions because of the fact that my opinion would be contrary to the advice given to all local municipalities by the Secretary of State's office.
I received this opinion on Tuesday, July 26, a day before the opening of qualifying, which was too late to release an opinion that gave advice contrary to what the secretary of state's office had advised at least 8 municipalities.
It is the secretary of state's position that aldermen who run at-large should qualify for office, even though the reapportionment plan for the municipality has not been precleared by the Justice Department. The sec. of state's office, Wade Martin, told me this morning that that is the way that it has been done for years and they do not see why it should be changed.
My opinion is that an at-large seat is a part of a governing authorities reapportionment plan as a whole and if the plan is not precleared, then the at-large seat is also not precleared. I think that an at-large seat is subject to section 2 of the VRA, just as a single district seat. However, I thought it would be better to refrain from giving legal advice in this opinion, after the fact, that would be contrary to the secretary of state's office.